IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELIAS MOULOPOULOS,

                    **Plaintiff,**

       **v.**

SODEXO, INC.,

                    **Defendant.**

**Case No. 21 C 1363**

**Judge Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

Plaintiff Elias Moulopoulos brings this action for wrongful discharge in violation of the Illinois Worker's Compensation Act, 820 ILCS 305. (Compl., Notice of Removal, Ex. A, Dkt. No. 1-2.) Defendant Sodexo now motions for summary judgment. (Dkt. No. 23.) For the reasons stated below, Defendant's Motion is granted.

### I.  BACKGROUND

The following facts are taken from the parties' Local Rule 56 statements and the underlying exhibits. Defendant Sodexo is a company that performs patient transport services. (Pl.'s Resp. to Def.'s Stmt. of Facts ("PSOF") ¶ 1, Dkt. No. 26.) On May 4, 2020, Defendant hired Plaintiff to work as a patient transporter. (*Id.* ¶ 2.) At the time, Defendant was performing patient transport services for Swedish Covenant Hospital in Chicago. (*Id.* ¶ 1.) Plaintiff's job duties included transporting patients to specified areas within the hospital and to comply with all safety policies

and procedures. (*Id.* ¶ 2.) When Plaintiff was hired, he was given an employee handbook containing a "Safety in the Workplace" policy. (*Id.* ¶¶ 5—6.) The safety policy informed employees that violations of the policy might result in termination. (*Id.* ¶ 6.) The policy also stated that Defendant would not retaliate against any employee who makes a good faith claim for Workers' Compensation. (*Id.*) Plaintiff also received Defendant's COVID-19 policy. (*Id.* ¶ 8.) The COVID-19 policy required that employees verify that they were not exhibiting COVID symptoms before reporting to work each morning. (COVID-19 Policy at 1, Def.'s Stmt. of Facts, Ex. 10, Dkt. No. 24-4.) According to the policy, an employee who has COVID-19, symptoms of COVID-19, or has been in close contact with someone who has COVID-19 cannot report to work. (*Id.* at 2.) The policy stated that an employee who does not participate in the mandatory requirements may be considered to have voluntarily resigned. (*Id.* at 3.) The policy also has a section specific to visitors. (*Id.* at 2.) Any visitors who have COVID-19, or exhibit symptoms, or have been in close contact with someone who has COVID-19 are not permitted to enter Defendant's facilities. (*Id.*) Additionally, Swedish Covenant Hospital had its own COVID-19 policies. (PSOF" ¶ 11.) The hospital screened each of Sodexo's employees daily. (*Id.*) The hospital generally did not permit family members to visit patients except in special circumstances. (*Id.*)

On September 30, 2020, Plaintiff notified a supervisor at work that he was experiencing COVID-19 symptoms. (*Id.* ¶ 14.) That same day, Plaintiff was tested for COVID-19 and was told to go home pending the results of the test. (*Id.* ¶ 15.) Plaintiff was informed that he would be notified when to return to work, and a supervisor would email him when he was cleared to return. (*Id.*) On October 3, 2020, Plaintiff was informed that he tested positive for COVID-19 and that he should only return to work after a quarantine period. (*Id.* ¶ 16.)

On October 4, 2020, Plaintiff's wife and child were in an automobile accident and were taken to the emergency room of Swedish Covenant Hospital. (Def's. Resp. to Pls.' Stmt. of Facts ("DSOF") ¶ 4, Dkt. No. 29.) When Plaintiff learned about the accident, he went to the hospital's emergency department. (*Id.*) The parties dispute whether Plaintiff initially told hospital staff that he had COVID, but it is undisputed that Plaintiff was allowed into the hospital. (*Id.* ¶ 5.) Plaintiff alleges that he honestly disclosed his diagnosis to the employee who screened him upon entry. (*Id.*) Defendants allege that Plaintiff did not disclose his diagnosis at first, gained entry, and then later disclosed his diagnosis to hospital staff. (PSOF ¶ 24.) The parties also dispute whether Plaintiff properly wore his mask during his visit. (DSOF ¶ 6.) After this incident, Defendant opened an investigation into what happened. (PSOF ¶ 25.) On October 12, 2020, Plaintiff was

suspended; at the time, the investigation was still ongoing. (*Id.* ¶ 40.) On November 16, 2020, Plaintiff was terminated. (*Id.* ¶ 39.) Plaintiff's supervisor notified him that he was terminated for violating COVID-19 safety rules. (*Id.*) After his termination, Plaintiff appealed the decision to Defendant's district manager. (*Id.* ¶ 42.) The district manager replied that he believed the termination was warranted and would not reverse it. (*Id.* ¶ 44.)

On November 12, 2020, Plaintiff filed a worker's compensation claim with the Illinois Worker's Compensation Commission. (Worker's Compensation Claim at 2, Def.'s Stmt. of Facts, Ex. 8, Dkt. No. 24-7.) It is unclear whether Plaintiff's supervisors were aware of Plaintiff's worker's compensation claim prior to Plaintiff's termination. (PSOF ¶¶ 48—50.) Plaintiff testified he has no firsthand knowledge of who at the company received his application for worker's compensation benefits, and all communications regarding his claim were through his attorney. (*Id.* ¶ 53.) It is undisputed, however, that Plaintiff's supervisors discussed Plaintiff's claim on November 30 and December 3, 2020, dates approximately two weeks after Plaintiff's termination. (*Id.* ¶¶ 51—52.) Plaintiff's supervisors did not testify to whether they learned about Plaintiff's claim prior to November 30, 2020. (*Id.* ¶¶ 48—50.)

Between October 2020 and April 2021, Defendant terminated nine additional employees for violating COVID-19 guidelines. (*Id.*

¶ 62.) Plaintiff objected to introducing the disciplinary records of the other employees, arguing that it is "unsupported by any documentary evidence." (*Id.*) On March 23, 2022, Defendant filed a Motion to address Plaintiff's objection about these disciplinary records and argued that the records should be considered by the Court. (Dkt. No. 30.) Plaintiff never responded to this Motion. On April 6, 2022, the Court granted Defendant's Motion. (Dkt. No. 31.) As such, the Court considers the disciplinary records as part of the undisputed facts for purposes of the summary judgment motion.

Of the nine employees terminated for violating COVID-19 guidelines, four were terminated for wearing masks improperly. (DSOF ¶ 62.) Three were terminated for reporting to work with COVID-19 or COVID-19 symptoms. (*Id.*). Two were terminated for failing to get tested for COVID-19. (*Id.*)

On February 5, 2021, Plaintiff filed a Complaint in the Circuit Court of Cook County. (Notice of Removal ¶ 1, Dkt. No. 1.) Plaintiff's Complaint alleges one count of retaliatory discharge in violation of the Illinois Workers' Compensation Act. (Compl at 5.) On March 11, 2021, Plaintiff's case was removed to this Court. (Notice of Removal.) On January 14, 2022, Defendant moved for summary judgment. (Dkt. No. 22.)

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is "no genuine dispute of material fact and the movant is entitled to judgment as

a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The relevant substantive law governs whether a fact is material. *Id*. When reviewing the record on a summary judgment motion, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). When a party who bears the burden of proof cannot establish the existence of an element essential to their case, summary judgment must be entered against them. *Berry v. Delta Airlines Inc.*, 260 F.3d 803, 808 (7th Cir. 2001.) Put differently, if the factual record cannot support a rational trier of fact to find for the nonmoving party, summary judgment is appropriate. *Scott*, 550 U.S. at 380.

### III. <u>DISCUSSION</u>

In Illinois, to succeed on a claim of retaliatory discharge in violation of the Illinois Worker's Compensation Act ("IWCA"), a plaintiff must prove that he was an employee before the injury, that he exercised a right granted under the act, and that he was terminated because he filed a worker's compensation claim. *Beaty v. Olin Corp.*, 693 F.3d 750, 753 (7th Cir. 2012). Retaliatory discharge under the IWCA is a narrow and limited exception to the

at-will employment doctrine. *Hillman v. City of Chicago*, 834 F.38 787, 793 (7th Cir. 2016.)

The precise issue before the Court is whether Plaintiff can prove the third element of his claim, that he was terminated because he filed a worker's compensation claim. To establish causation, a plaintiff must prove that his discharge was primarily in retaliation for his exercise of a protected right. *Phillips v. Continental Tire the Americas LLC.*, 743 F.3d 475, 477 (7th Cir. 2014.) Defendant argues that summary judgment is warranted because Defendant's employees were not aware of Plaintiff's ICWA claim when Plaintiff was terminated. Under Illinois law a claim for retaliatory discharge requires that the "relevant decision maker knew that the employee intended to file or had filed a workers' compensation claim." *Hillman*, 834 F.3d at 794.

Plaintiff argues that his supervisors were aware of his ICWA claim prior to his termination. Plaintiff's argument, however, is based on the speculation that Defendants could have known about the claim prior to his termination and not based on the evidence in the record. Defendants suggest that a November 30, 2020, email conversation is the earliest date its employees were notified of Plaintiff's claim. Plaintiff argues that the November 30, 2020, communication does not state whether the participants learned of Plaintiff's claim prior to that date. It is true that there is no fact to point to in the record showing exactly when Defendant's

employees learned about Plaintiff's ICWA claim. However, there is also no fact in the record showing that Defendant's employees knew about Plaintiff's claim when they decided to terminate him. Because of this, there is no "genuine dispute of material fact." Plaintiff does not argue that Defendant knew about Plaintiff's ICWA claim when he was terminated. Plaintiff only argues that Defendant's employees *could* have known about his claim at the time. As there is no genuine factual dispute, summary judgment is appropriate, and the Court's analysis of Plaintiff's claim could end here. However, out of an abundance of caution, the Court will proceed in its analysis, under the assumption that Defendant knew about Plaintiff's ICWA claim at the time he was terminated.

If an employer provides a valid, non-pretextual reason to terminate an employee, a plaintiff cannot prevail on a retaliatory discharge claim. *Carter v. Tennant Co.*, 383 F.3d 673, 678 (7th Cir. 2004.) When analyzing an employer's stated reason for termination, a court must focus on the honesty, not the accuracy, of the reason. *McCoy v. Maytag Corp.*, 495 F.3d 515, 522 (7th Cir. 2007). Here, Defendant argues that it terminated Plaintiff for violating its COVID-19 rules, not because he filed an ICWA claim. Plaintiff argues that when he came to the hospital on October 4, he did not come as an employee, but as a private citizen. Plaintiff adds that Defendant has not terminated an employee for out-of-hours conduct previously, and that he was never given the

- 8 -

hospital's visitor policy. Plaintiff's argument is that because his termination stemmed from conduct not prohibited by any policy he was given, the reason given for his termination was pretextual.

Plaintiff's argument fails because his conduct was prohibited by a policy he was given. Plaintiff received Defendant's COVID-19 safety policy. The visitor section of that policy specifies that any visitors will be screened for COVID-19. If a visitor reports COVID symptoms, or a diagnosis, they will not be permitted to enter the facility. On October 4, 2020, Plaintiff arrived at the hospital as a private citizen, in other words, a visitor. He was positive for COVID-19 at the time. While he was allowed entry, he knew that anyone who was COVID positive should have been turned away. Regardless of whether he was honest about his diagnosis or not, his conduct violated Defendant's COVID-19 policy. Defendant's stated reason for terminating Plaintiff is this same violation.

The Court finds that the Defendant's basis for terminating Plaintiff was valid and not pretextual. The Court finds that Defendant honestly believed it terminated Plaintiff for violating the COVID-19 policy. This finding is supported by the record. Aside from Plaintiff, Defendant terminated nine other employees for COVID-19 related issues. Three of those employees were terminated for reporting to work with COVID-19 or COVID-19 symptoms. The Seventh Circuit has previously ruled that when an employer has consistently terminated employees for violations of a policy, a

plaintiff cannot establish causation. *Phillips*, 743 F.3d at 477. Here, Plaintiff, and other employees, were terminated for failing to follow Defendant's COVID-19 policy.

Plaintiff has failed to prove that he was fired in retaliation for filing an ICWA claim. The record is devoid of evidence showing that Plaintiff's supervisors knew about the ICWA claim when they fired him. Furthermore, Defendant honestly believed it was terminating Plaintiff for violations of its COVID-19 policy. Accordingly, Plaintiff has failed to prove the causation element of his claim.

## IV.  CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment (Dkt. No. 23) is granted.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 9/20/2022